Tagged



## ORDERED in the Southern District of Florida on April 21, 2009.

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                      Case No.: 08-20193-BKC-PGH
                                            Chapter 7 Proceeding
Alexander Clark Cone and
Valerie Taya Cone,
      Debtors.
_____/

Advocate Capital, Inc.,
      Plaintiff,
v.                                          Adv. No.:08-1798-BKC-PGH-A

Alexander Clark Cone and
Valerie Taya Cone,
      Defendants.
_____/

## MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court upon Advocate Capital,
Inc.'s ("Advocate" or "Plaintiff") *Motion for Summary Judgment*
("Motion"). On November 26, 2008, Advocate filed a Complaint
against Alexander Clark Cone ("Mr. Cone") and Valerie Taya Cone
("Mrs. Cone") (collectively, the "Defendants") seeking a

determination that a judgment debt Advocate obtained against the Defendants is nondischargeable. As directed by the Court's Briefing Order, the Plaintiff and the Defendants filed a *Joint Stipulation of Facts Relating to Plaintiff's Motion for Summary Judgment* which provides the following background information.

## BACKGROUND

Mr. Cone is a trial attorney who owns the Law Office of A. Clark Cone, P.A. (the "Law Firm"). On August 2, 2002, the Law Firm entered into a Master Loan and Security Agreement[1] with Advocate which was amended on August 2, 2005. On August 2, 2002, Mr. Cone executed a Guaranty of the Law Firm's indebtedness with Advocate. On September 28, 2004, Mrs. Cone executed a Guaranty of the Law Firm's indebtedness with Advocate. Advocate loaned $325,000.00 to the Law Firm pursuant to the Agreement.

It is undisputed that Advocate is the holder of a valid, properly perfected and unavoidable security interest in certain Law Firm's assets (the "Collateral") which include:

> (a) all the accounts, general intangibles, payment intangibles, and all similar rights that the Law Firm may have of every nature and kind, including specifically and without limitation, all of the Law Firm's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, for costs and expenses advanced and to be advanced, and all other rights and interest that the Law Firm may have in and

---

[1] The parties stipulated that the documents referenced herein and provided to the Court as exhibits are true and correct copies.

2

with respect to each and every undertaking and/or engagement for legal and other services performed or to be performed by the Law Firm or by the Law Firm's attorneys and non-attorney personnel;

(b)    all credits, monies and properties of the Law Firm in Advocate's possession or control;

(c)    rights under life insurance and other policies of insurance with respect to Mr. Cone or Mrs. Cone; and

(d)    any and all substitutions therefore, replacements and proceeds thereof and all supporting obligations with respect thereto.

Under the terms of the Agreement, the Law Firm unconditionally promised to pay Advocate the entire principal amount outstanding with respect to a particular client matter upon the receipt by the Law Firm of any amount payable with respect to the particular client matter. Under the Agreement, the Law Firm also promised to hold all proceeds of Collateral, in any form, in trust for Advocate and immediately deliver all such proceeds to Advocate. Mr. Cone and Mrs. Cone guaranteed the payment and performance of the obligations of the Law Firm and agreed that they would be jointly and severally liable for the debts of the Law Firm to Advocate.

In order to obtain money from Advocate or an extension or renewal of credit from Advocate, Mr. Cone and Mrs. Cone provided written financial statements to Advocate. The written financial statement of Mr. Cone and Mrs. Cone stated that they had $200,000.00 cash on hand and in banks, and automobiles and other property valued at $402,000.00.

Advocate advanced funds to the Law Firm in the Price, Carlton, Lanslaw, Shaver, Garruldoo and Paxton cases, and in other cases. On August 11, 2006, and August 14, 2006, counsel for Advocate sent default letters to the Law Firm and Mr. Cone. The August 11, 2006 letter informed the Law Firm and Mr. Cone that the obligations evidenced by the Agreement had matured and were due and payable in full and that events of default had occurred. The August 14, 2006 letter informed the Law Firm and Mr. Cone that, due to the events of default, Advocate was entitled to immediate possession of all the Collateral. The August 14, 2006 letter also stated that no Collateral should be used for any purpose and that the Collateral should not be disposed of except for delivery to Advocate. Finally, the August 14, 2006 letter stated that any use of the Collateral in violation of these requirements would be deemed a conversion of Advocate's Collateral.

Advocate subsequently brought suit against the Law Firm, Mr. Cone and Mrs. Cone in the United States District Court for the Middle District of Tennessee. On June 19, 2007, the District Court issued an Order and Memorandum Opinion ("Judgment") wherein it entered judgment in favor of Advocate against the Law Firm, Mr. Cone and Mrs. Cone, jointly and severally, in the amount of $399,033.89. The District Court also held that the Law Firm, Mr. Cone and Mrs. Cone were prohibited from retaining, using or disposing of the Collateral, that Advocate was entitled to

4

immediate possession of the Collateral, and that the Law Firm, Mr. Cone and Mrs. Cone were required to turnover the Collateral to Advocate. On July 23, 2008, Mr. and Mrs. Cone filed for Chapter 7 relief.

The Complaint contains two counts. Count I seeks a determination that the Judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) based upon allegations that Mr. Cone and Mrs. Cone intentionally provided material false written financial statements to Advocate in order to obtain money or an extension or renewal of credit from Advocate. Count II seeks a determination that the Judgment is nondischargeable as a debt for willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), based upon allegations that Mr. Cone converted Advocate's Collateral by directing the Collateral and proceeds of the Collateral to uses other than paying Advocate.

<b>CONCLUSIONS OF LAW</b>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**I.  *The Summary Judgment Standard***

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Rice v. Braniger Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *In re Pierre*, 198 B.R. 389 (Bankr. S.D. Fla. 1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (*citing Anderson*, 477 U.S. at 248). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"

6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*citing* Fed R. Civ. P. 1). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir. 1988).

As discussed below, the Court finds that there are material facts in dispute respecting the written financial statements provided to Advocate. Therefore, the Court denies Plaintiff's Motion for Summary Judgment as to Count I. As to Count II, the Court finds for the Plaintiff, but only with respect to Mr. Cone's liability for failing to turn over the Collateral to Advocate following entry of the Judgment. Plaintiff's Motion for Summary Judgment is denied as to the remaining issues because there are material facts in dispute.

## II. Count I - 11 U.S.C. § 523(a)(2)(B)

It is well-settled that exceptions to discharge are to be liberally construed in favor of the debtor. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301,304 (11th Cir. 1994). Section 523(a)(2)(B)[2] provides that a debt may be excepted from discharge

---

[2]Section 523(a)(2)(B) states in pertinent part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
 (B) use of a statement in writing -
  (i) that is materially false;

if it was obtained by a writing: (1) that is materially false; (2) respecting the debtor's or an insider's financial condition; (3) on which the creditor to whom the debt is liable for such money, property, services, or credit reasonably relied; and (4) that the debtor caused to be made or published with the intent to deceive. *Id.*

Advocate argues that written financial statements provided to them by the Defendants contained materially false information concerning the financial condition of the Law Firm, Mr. Cone and Mrs. Cone. Advocate maintains that the Defendants' personal financial statement indicated that they had $200,000.00 cash on hand and in banks. However in his 2004 examination on October 27, 2008, Mr. Cone testified that he and Mrs. Cone did not have $200,000.00 personally. Mr. Cone's testimony was that since he owned the Law Firm and the Law Firm had $200,000.00 in cash, then he thought he had $200,000.00 in cash because he owned whatever the Law Firm owned. Advocate maintains that Mr. Cone's explanation is implausible given that he is an attorney, that separate financial statements were submitted on behalf of the Law Firm and the Defendants personally, and that the financial statement at issue

---

(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;
11 U.S.C. § 523(a)(2)(B).

8

had as its heading "Personal Financial Statement." In his Response and Declaration, Mr. Cone disputes that the subject financial statements are false and denies that they are materially false. In addition, Mr. Cone denies that Advocate reasonably relied upon the financial statements. He maintains that Advocate repeatedly told him that they were relying on his files not his financial statement. Finally, Mr. Cone argues that there is no proof that Defendants caused to be made or published the subject financial statements with intent to deceive.

In addition, whether a debtor in bankruptcy acts with requisite "intent to deceive" under section 523(a)(2)(B) is also an issue of fact. *Id.* Determinations concerning fraudulent intent depend largely upon an assessment of the credibility and demeanor of the debtor. *Id.* at 305. Taking all reasonable inference in favor of the non-moving party as required in considering a motion for summary judgment, the Court finds that there exist disputed issues of fact as to Count I whose resolution require a trial.

### III. Count II- 11 U.S.C. § 523(a)(6)

Advocate also seeks a determination that the Judgment is excepted from discharge pursuant to § 523(a)(6) as a debt for willful and malicious injury.[3] "Willful and malicious injury

---

[3] Section 523(a)(6) states in pertinent part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of
    this title does not discharge an individual debtor from any debt-
    (6) for willful and malicious injury by the debtor to another
        entity or to the property of another entity;

includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir. 1995). However a willful and malicious injury "does not follow as of course from every act of conversion without reference to the circumstances." *Id.* (*quoting Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). In this case, Advocate alleges that Mr. Cole converted the Collateral and diverted it to uses other than paying Advocate. However, Advocate makes no such allegations as to Mrs. Cone. Nevertheless, Advocate seeks a determination in Count II that the debt is nondischargeable as to both Mr. Cone and Mrs. Cone. Absent some evidence that Mrs. Cone was involved in the management of the Law Firm, and that she participated in the alleged conversion of the Collateral, she cannot be held liable for a debt for willful and malicious injury based upon conversion of the Collateral. Therefore, the Court will deny Advocate's Motion as to Mrs. Cone in Count II.

As to Mr. Cone, there are two distinct time periods respecting his alleged liability: 1) the pre-Judgment period beginning in August 2006, when Advocate sent the default letters, through entry of the District Court Judgment on June 19, 2007, and 2) the post-

---

11 U.S.C. § 523(a)(6).

Judgment period following entry of the Judgment. As discussed below, the Court finds that entry of summary judgment against the Mr. Cone is appropriate based upon his failure to turn over the Collateral following entry of the Judgment. However, disputed issues of fact preclude entry of summary judgment for the period prior to entry of the Judgment.

*A. Pre-Judgment*

As stated above, without reference to circumstances, not all acts of conversion result in willful and malicious injury. *Wolfson*, 56 F.3d at 54. In *Davis*, the Supreme Court noted that "[i]n some circumstances, . . . '[t]here may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one.'" *Id*. (*quoting Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332). Mr. Cone's Declaration states that when he settled a case, the funds went into the Law Firm to finance other files in the same manner as had been done in the past. In his 2004 examination, Mr. Cone testified it was his belief that upon receiving monies from a case where Advocate had advanced funds, he had the option to use the funds to finance other cases. He stated that he believed he had this option: 1) with the consent of Advocate, and 2) based upon having done it in the past.

The Court notes that the Agreement provides for payment to be

made for loans for particular client matters upon the occurrence of specific payment events such as, for example, receipt of funds in connection with a particular client matter. Although the Agreement links payment to particular client matters, it fails to indicate what the particular client matters are or to specify a procedure for tracking particular client matters. In addition, the Agreement describes the Collateral as including _all_ monies and accounts of the borrower such that Advocate had a general lien on all of the Law Firm's accounts. Reading its terms together, the Agreement prohibits the use of loan proceeds for personal purposes, but it does not prohibit the use of loan proceeds for the Law Firm's general business purposes - such as funding other cases. "[A] conversion accomplished with the knowing acquiescence of the creditor" will not support a § 523(a)(6) exception. _Meeker v. McGinnis_, 586 F.2d 162, 163 (10th Cir. 1978). Therefore, there is a genuine issue of material fact as to whether there actually was a conversion of the Collateral prior to entry of the Judgment that would support a § 523(a)(6) exception. The Court makes no determination here other than that there are disputed facts to be resolved before assessing liability for the pre-Judgment time period. Thus, entry of summary judgment is inappropriate for the time prior to entry of the Judgment.

A.    _Post-Judgment_

The District Court Judgment awarded possession of the

12

Collateral to Advocate. It further ordered that the Defendants were "PROHIBITED from retaining, using or disposing of" the Collateral (emphasis in original). As a matter of law, the Court finds that it was an act of conversion for Mr. Cone to retain, use, dispose of, or otherwise exercise control over the Collateral after entry of the Judgment. Although not every act of conversion will give rise to a willful and malicious injury, this act of conversion in defiance of the District Court Order is willful and malicious within the meaning of § 523(a)(6). As discussed above, there are material facts in dispute as to whether Mr. Cone could have used the loan proceeds for operation of the Law Firm during the pre-Judgment time period. However, after entry of the Judgment Mr. Cone was clearly on notice that he was prohibited from using any of the proceeds for any reason whatsoever, including using the proceeds for the operation of the Law Firm's business. Therefore, the Court finds for Plaintiff in part as to Count II, but only with respect to Mr. Cone's liability for failing to turn over the Collateral to Advocate following entry of the Judgment. "When a debt is declared nondischargeable, the amount of the nondischargeable debt is determined by the fair market value of the collateral at the time of the conversion." *Sears, Roebuck & Co., v. Dibben (In re Dibben)*, 139 B.R. 23, 24 (Bankr. D. Id. 1992). Based upon the record, the Court cannot determine the value of the Collateral as of entry of the Judgment and hence cannot determine the amount of the Judgment

13

that is excepted from discharge. A trial is therefore necessary to determine the amount of the Judgment that is excepted from Mr. Cone's discharge.

## CONCLUSION

For the reasons stated above, the Court finds that summary judgment is unwarranted as to Count I because of the existence of disputed issues of material fact regarding the elements of § 523(a)(2)(B). As to Count II, absent evidence that Mrs. Cone was involved in the management of the Law Firm, summary judgment is unwarranted as to Mrs. Cone. However, the Court finds for Plaintiff and enters summary judgment against Mr. Cone in part as to Count II. Mr. Cone's liability for the Judgment debt shall not be excepted from discharge as a debt for willful and malicious injury pursuant to § 523(a)(6), insofar as Mr. Cone failed to turn over the Collateral after entry of the Judgment. The value of such Collateral as of the date of the Judgment, and hence the amount of the Judgment that is excepted from Mr. Cone's discharge, as well as all remaining issues shall be determined at trial.

## ORDER

The Court, having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised in the premises does hereby **ORDER AND ADJUDGE** that:

1. Plaintiff's Motion is **DENIED** as to Count I.

14

2. Plaintiff's Motion is **DENIED** as to Mrs. Cone in Count II.

3. Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART** as to Mr. Cone in Count II. The Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury insofar as Mr. Cone failed to turn over the Collateral after entry of the Judgment in District Court. The value of the Collateral as of entry of the District Court Judgment and hence the amount of the Judgment that is excepted from Mr. Cone's discharge shall be determined at trial. Any claimed liability of Mr. Cone prior to entry of the Judgment on June 19, 2007 is also deferred until trial.

###

Copies furnished to:
Robert Furr, Esq.
Austin McMullen, Esq.
Julie Hough, Esq.

Attorney Hough shall serve a copy on any interested parties not listed above and file a certificate of service with the Court.